**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 16, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ISHAK SATRIAWAN,

Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General,

Respondent.

No. 06-9541
(No. A97-188-515)
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BALDOCK**, and **MURPHY**, Circuit Judges.

Ishak Satriawan is a native and citizen of Indonesia. He petitions for review of an order of the Board of Immigration Appeals (BIA) affirming the denial by the immigration judge (IJ) of his request for asylum, restriction on removal,[1] and protection under the Convention Against Torture (CAT).

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Although the parties and the agency refer to "withholding of removal," this language was changed to "restriction on removal" with the enactment of

(continued...)

Mr. Satriawan asserts that the IJ erred in finding that he had not established his eligibility for restriction on removal. He does not raise any other challenges to the BIA or IJ decisions.[2] The BIA adopted and affirmed the IJ's decision in a single-member brief order. *See* 8 C.F.R. § 1003.1(e)(5). The BIA's decision noted that it was affirming the restriction on removal claim for the reasons stated in the IJ's decision. In these circumstances, the BIA's decision is the final order, but we may consult the IJ's decision when it provides a more complete explanation of the grounds for the decision. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). Because the BIA adopted the IJ's decision without providing any additional reasoning on the restriction on removal claim, we will rely on the grounds stated in the IJ's decision for the purposes of our review. *See id*. We deny the petition for review.

---

[1](...continued)
the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Because this claim was filed after IIRIRA's effective date, we will use the term "restriction on removal." *See Yan v. Gonzales*, 438 F.3d 1249, 1251 n.1 (10th Cir. 2006).

[2]     Mr. Satriawan did not appeal the denial of his asylum claim because, as he noted in his brief, this court lacks jurisdiction to review the BIA's decision that his asylum application was untimely. *See Diallo v. Gonzales*, 447 F.3d 1274, 1281 (10th Cir. 2006). Mr. Satriawan has waived any challenge to the denial of his CAT claim because he did not raise any argument regarding this claim on appeal. *See Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002).

I.

"We review the BIA's legal determinations de novo, and its findings of fact under a substantial-evidence standard." *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005). "The BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quotation omitted).

Mr. Satriawan bears the burden of establishing that he is eligible for restriction on removal by demonstrating that he suffered past persecution or that there is a "clear probability of persecution" if he were returned to Indonesia. *Id.* at 1195 (quotation omitted); 8 C.F.R. § 1208.16(b)(1)(iii) ("the applicant bears the burden of establishing that it is more likely than not that he or she would suffer [persecution]"). "[P]ersecution requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and requires more than just restrictions or threats to life and liberty." *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004) (quotations omitted).

Mr. Satriawan testified that he was persecuted in Indonesia based on his Chinese ethnicity. Specifically, he recalled occasions when his schoolmates beat him, money was extorted from him while he was a shop owner, his brother and his brother's wife were harassed, his brother was injured after he was pulled off a motorcycle, and he was hit by Muslims after leaving a wedding. He also testified that he was caught in the 1998 riots in Jakarta and that his shop was burned. He

argues that these incidents constituted past persecution and also support his claim of a clear probability of future persecution.

## II.

Mr. Satriawan may establish his eligibility for restriction on removal by showing that he has suffered past persecution. *See Niang*, 422 F.3d at 1195 (explaining that both asylum applicants and those seeking restriction on removal may establish a presumptive entitlement to relief based on past persecution); 8 C.F.R. § 1208.16(b)(1). To establish past persecution, Mr. Satriawan must show: "(1) an incident, or incidents, that rise to the level of persecution; (2) that is on account of one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either unable or unwilling to control." *Niang*, 422 F.3d at 1194-95 (quotation omitted) (describing past persecution standard for asylum).

The IJ noted that "[Mr. Satriawan] did suffer harassment and discrimination growing up as a Chinese person in Indonesia." Admin. R. at 54. He concluded, however, that none of the incidents described by Mr. Satriawan amounted to past persecution. The IJ did note that being caught in the 1998 Jakarta riots and losing his business when his shop was burned down might be considered persecution, if Mr. Satriawan could show that the government was unable or unwilling to control the rioters. *Id.* Because the IJ ultimately determined that Mr. Satriawan had not

-4-

met this burden, the IJ concluded that he was not entitled to restriction on removal. Substantial evidence in the record supports this determination.

Mr. Satriawan argues that the IJ erred because he established economic past persecution based on the extortion money that he had to pay to the Muslim gangs to keep his shop open. "Potential job loss or generalized economic disadvantage, however, does not equal persecution." *Baka v. INS*, 963 F.2d 1376, 1379 (10th Cir. 1992). Economic persecution has been defined as the "deliberate imposition of substantial economic disadvantage." *Liao v. United States Dep't of Justice*, 293 F.3d 61, 70 (2d Cir. 2002) (quotation omitted); *Borca v. INS*, 77 F.3d 210, 216 (7th Cir. 1996). Mr. Satriawan has not satisfied this standard.

Although Mr. Satriawan testified that he had to close his first shop in Medan because he was not able to make a profit after he paid out the extortion money, the record shows that he was able to continue working and earn a living through other pursuits. After he closed his shop, he went to work for a fellow Chinese shop owner in a fabric shop. Later, he moved to Jakarta and opened a second shop. He did not testify about having to pay any extortion money when he was working in his photography shop in Jakarta. After Mr. Satriawan's shop was burned in the riots in 1998, he did not leave Indonesia. He stayed there for another three years, and there is no testimony that he suffered any further economic disadvantage. Moreover, he testified that when he came to the United States in 2001, he had no intention of staying here.

Mr. Satriawan's family, which includes his parents, three brothers, and two sisters, continues to live in Indonesia. His mother owns a noodle shop and his father used to make and sell Buddhist trinkets. He testified that his family "ha[s] adjusted to life in Indonesia," although "[y]ou have to pay to be safe." Admin. R. at 123. During cross-examination, he agreed with the statement that the ethnic Chinese in Indonesia own many of the businesses, estimating the percentage of Chinese-owned businesses to be seventy percent. *Id.* at 114-15. The Country Reports on Human Rights Practices from 2004 (Country Reports) noted that the ethnic Chinese "played a major role in the [Indonesian] economy." *Id.* at 172. Given these overall circumstances, Mr. Satriawan's decision to close his first shop because of the extortion payments is not a substantial economic disadvantage and does not rise to the level of economic persecution. *See, e.g., Capric v. Ashcroft*, 355 F.3d 1075, 1092-93 (7th Cir. 2004) (explaining that the termination of petitioner's job did not constitute economic persecution given the overall financial circumstances of his family, his failure to look for another job, and the harsh generalized economic conditions in the area at the time).

Mr. Satriawan also argues that the IJ erred in determining that he had failed to show that the government was unable or unwilling to control the 1998 Jakarta rioters. Although the IJ noted that the government could not prevent the riots, he concluded that no government can provide absolute protection for its citizens and that the government has taken steps to protect the Chinese minority in Indonesia.

-6-

In making this determination, the IJ relied on the Country Reports on Human

Rights Practices from 2004. That report states:

> [T]he government officially promotes racial and ethnic tolerance. Ethnic Chinese accounted for approximately 3 percent of the population, by far the largest nonindigenous minority group, and played a major role in the economy. Instances of discrimination and harassment of ethnic Chinese Indonesians declined compared with previous years.

Admin. R. at 172. This evidence supports the IJ's conclusion that the government

is able and willing to protect the Chinese minority in Indonesia. Mr. Satriawan

has failed to show that the IJ erred in determining that he had not established past

persecution.

III.

Mr. Satriawan may also establish eligibility for restriction on removal by

showing that "it is more likely than not" that he will be persecuted if he is

returned to Indonesia. 8 C.F.R. § 1208.16(b)(1)(iii). Mr. Satriawan asserts that

the IJ erred in concluding that he had not met this standard. In reaching this

conclusion, the IJ noted that Mr. Satriawan's family remained in Indonesia, that

they had "learned to live in the imperfect security situation of Indonesia," and

that they appeared to be "relatively unharmed in recent years." Admin. R. at 55.

Mr. Satriawan argues that his family has to pay to be safe and that he will be

subject to this same economic persecution if he returns to Indonesia. As

discussed above, the record evidence shows that Mr. Satriawan and his family are

not suffering from the "deliberate imposition of substantial economic disadvantage." *Borca*, 77 F.3d at 216. The IJ did not err in concluding that Mr. Satriawan had not established a clear probability of persecution if he is returned to Indonesia.

The petition for review is DENIED. Mr. Satriawan's motion to file his reply brief out of time is GRANTED.

Entered for the Court


Robert H. Henry
Circuit Judge